266 So.2d 426

**Earl KEATON et ux.**

v.

**TRANSIT CASUALTY COMPANY et al.**

**No. 52684.**

Sept. 20, 1972.

Dissenting Opinion Sept. 26, 1972.

BARHAM, J., is of the opinion the writ should be granted and assigns reasons.

BARHAM, Justice, Dissenting from Refusal to Grant Writ.

The majority has upheld a ruling of the courts below that Lee E. Jones, driver of the tractor-trailer, was negligent in trying to save his life as he took defensive measures when faced with what a reasonable man would believe at the moment was certainty of a serious accident.

The defendant Jones was driving a large tractor-trailer loaded with 40-foot creosote piling on a main highway approaching a "T" intersection where adequate signs warned vehicles to come to a complete stop before entering the highway. Mrs. Brown was the driver of an automobile on the inferior highway. I now quote the Court of Appeal's finding of fact:

"The evidence reflects that upon reaching the T-intersection, Mrs. Brown came *to a complete stop for some two or three seconds* and then proceeded forward across the Louisiana Highway 42 to the point of collision.

"When Mrs. Brown _slowed to the stop_, the tractor-trailer unit was approximately *300 feet* East of the T-intersection proceeding West on Highway 42. The driver of the tractor-trailer unit testified that because of the weight of his load he was using ninth gear at which the maximum speed of his truck was 40 or 45 miles per hour and, as soon at it became apparent that Mrs. Brown was starting forward into the East-West roadway, that he sounded his horn and began applying his foot brakes.

"A disinterested eye witness, Gordan W. Jones, who was parked in a truck just off the south side of Highway 42, approximately 300 feet East of the T-intersection testified that the tractor-trailer unit sounded his horn when it was directly in front of him. At that time he estimated the speed of the tractor-trailer as 50 to 55 miles per hour. Upon hearing the horn he looked

up, saw the truck directly opposite and then looked down the road and saw the car. At the time the car was stopped and then started across the highway. [It is important to note that the Court of Appeal at this point, for some unknown reason, omitted the most pertinent testimony of the disinterested witness, whose testimony it accepted on every other point. The circumstances recounted in the omitted testimony had actually already been found as a fact by the court.* That witness stated that *at the time the driver of the tractor-trailer blew its horn when it was 300 feet east of the intersection, Mrs. Brown remained stopped for two or three seconds* and then proceeded forward across the highway.] As the car started across the highway, the truck-trailer unit veered to the left side of the highway onto the shoulder where it struck the automobile. The tractor-trailer unit left skid marks of 96 to 99 feet from the point where the brakes were first applied to the point of collision." (All emphasis mine.)

From the facts found by the Court of Appeal, which we are compelled to accept at this point, no emergency began to arise until two or three seconds *after* the large tractor-trailer going 40 to 45 miles per hour reached a point 300 feet east of the intersection. Travelling at that speed, the vehicle would have moved approximately 58 to 66 feet per second, or approximately 116 to 132 feet in two seconds. Time had to elapse for the driver to blow his horn and apply his foot brake. Average reaction time to apply brakes is about two-thirds of a second. Whatever the individual reaction time of the driver was, there is the added consideration that he actually applied his foot brake and sounded his horn, momentarily at least. Therefore an additional 60 feet, in approximation, were traversed before the driver turned the wheel to veer to the left and jumped to the floor to apply the hand brake. The reason for leaving the wheel and the seat of the cab was that the driver at this point thought of the load of piling in the trailer behind the cab, stacked in such a manner that if it broke loose, it would come slipping forward through the cab and kill him. After he applied the hand brake, the tractor-trailer skidded a total of 106 to 109 feet onto the opposite shoulder and the point of impact.

At the time the driver reacted to the automobile entering the intersection he was less than 140 feet from that intersection, travelling at a speed of at least 40 miles per hour. At the time he believed the ac-

---

* See that court's statement that "When Mrs. Brown *slowed* to the stop, the tractor-trailer unit was approximately 300 feet * * *" from the intersection, and its finding that Mrs. Brown remained stopped for some two or three seconds.

cident could not be averted and acted to save his own life while he continued the safety measures of veering to the left and applying the hand brake, he was between 108 and 124 feet from the intersection. Actually at that time, because his vehicle made the veering angle and moved across the highway to the far shoulder of the road, it was 131.2 to 141.5 feet from the point of impact. Of that latter distance the tractor-trailer left skid marks of 106 to 109 feet. (See appended diagram and comments.)

Under the finding of the Court of Appeal, the conclusion is inescapable that the defendant Jones was faced with a dire emergency, and that the standard of care to be exercised by him at that point is that of a reasonable man under those circumstances. When Jones saw the car moving into his lane of traffic and reacted to the emergency created by that movement, he could not be required to determine that the best course of action in the next two or three seconds would be to continue straight down the highway. It was reasonable for him to conclude that he could avert the action only by turning to the left. Had he stayed on the seat of the cab, applied the foot brake, and turned to the left, the result would have been the same. Why fault him because he veered to the left and applied a hand brake in evasive action?

We have said repeatedly under circumstances such as existed here that one is not required to choose what we can determine in retrospect would have been his best course of action. This driver not only acted reasonably but acted most prudently in veering to the left and applying the hand brake on the floor of the cab when he dived to the floor to protect himself from the stack of piling on the trailer behind him.

However tragic may be the fate of the victims of an accident, our law requires only those at fault to respond in damages. The only such person in the instant case is the driver of the car which entered the intersection and created the sudden emergency. Under the doctrine of sudden emergency I cannot find any act of negligence on the part of the driver of the tractor-trailer.

I respectfully dissent from the refusal to grant the writ.

## APPENDIX

A and A-1 -- Reaction Point -- Left Seat for Floor
B -- Impact Point
C -- Intersection
A to C -- 124'
A-1 to C -- 108'
B to C -- 75'
X to B -- 109' Skid Marks

$$AB^2 = 124^2 + 75^2$$
$$20,001 = 14,376 + 5,625$$
$$AB = \text{Square Root of } 20,001$$
$$AB = 141.5'$$
$$A\text{-}1B^2 = 108^2 + 75^2$$
$$17,289 = 11,664 + 5,625$$
$$A\text{-}1B = \text{Square Root of } 17,289$$
$$A\text{-}B = 131.2'$$

EYE WITNESS

BROWN CAR

TRACTOR-TRAILER

75'

300'

141.5'

131.2'

[7562]